OPINION
{¶ 1} Ricky L. White, Jr. appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of disrupting public services or emergency communications. *Page 2 
 {¶ 2} The charge arose out of an altercation between White and his then-girlfriend, Ashley Cox. On January 3, 2006, while he was moving his belongings out of the apartment he had shared with Cox, the two began to argue. When Cox attempted to call the police, White took the first phone that Cox had grabbed and threw it into the toilet. When Cox grabbed a second phone from another room, White took the battery out of it. Cox ultimately summoned the police from a neighbor's phone.
 {¶ 3} White was charged with disrupting public services or emergency communications in violation of R.C. 2909.04(A)(1). On July 7, 2006, he pled no contest to this charge. The court sentenced White to five years of intensive community control supervision with a domestic violence specialist and to 100 hours of community service, and it ordered him to pay court costs. The court also placed several other conditions on his community control.
 {¶ 4} White appeals from his conviction, raising two assignments of error.
 {¶ 5} I. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO DISMISS BECAUSE OHIO REV. CODE § 2909.04(A)(1) PROHIBITS IMPAIRMENT OF MASS COMMUNICATION SYSTEMS SERVICES, NOT IMPAIRMENT OF A SINGLE TELEPHONE"
 {¶ 6} White contends that he did not violate R.C. 2909.04(A)(1) because he did not impair mass communication.
 {¶ 7} R.C. 2909.04 provides:
 {¶ 8} "(A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:
 {¶ 9} "(1) Interrupt or impair television, radio, telephone, telegraph, or other mass *Page 3 
communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications[.]"
 {¶ 10} We have previously held that, under R.C. 2909.04, the destruction of even a single telephone may constitute a disruption of telephone service, which includes the initiation of telephone calls.State v. Thomas, Montgomery App. No. 19435, 2003-Ohio-5746. White claims that Thomas was wrongly decided because the purpose of R.C. 2929.04(A) is to protect mass communications.
 {¶ 11} The argument that White advances is precisely the same argument that we rejected in Thomas. In Thomas, the defendant ripped a phone from the wall when his girlfriend attempted to call the police. Although the phone belonged to the defendant, we reasoned:
 {¶ 12} "The statute prohibits purposeful or knowing damaging or tampering with property that interrupts or impairs telephone service. Telephone service includes the initiation of telephone calls. State v.Brown (1994), 97 Ohio App.3d 293, 301, 646 N.E.2d 838. As previously noted, the evidence indicates that after Thomas entered the apartment on June 15, he was told to leave. When he did not leave, [the victim] attempted to call the police. At that point, Thomas ripped the phone from the wall. After assaulting [the victim], Thomas left the apartment with the telephone in his possession. At that point, [the victim] was forced to contact the police from a pay phone. This is sufficient to sustain the conviction." Id. at ¶ 62.
 {¶ 13} Brown further elaborates on the reason for this conclusion: "* * * The evidence and reasonable inferences drawn therefrom * * * reveal defendant purposely, with specific intent, disconnected access to telephone service at the victim's apartment and prevented the making of an emergency 911 telephone call to the police or telephone call to anyone else for assistance while *Page 4 
defendant was beating her.
 {¶ 14} "By destroying the telephone connection in the victim's apartment, defendant interrupted or impaired existing telephone service to the public which included the victim, her two children who lived with her in the apartment and her father with whom she was conversing when defendant pulled the telephone out of the wall. Telephone service to the public includes both the initiation and receipt of telephone calls. Not only could the victim and her children no longer initiate or receive telephone calls at the apartment, but defendant also made it impossible for any member of the public to initiate telephone contact with the victim or her children at the apartment." Id. at 301.
 {¶ 15} White believes that the statute should be interpreted to prohibit interference only with telephone communications on a large scale, not interference with the phone use of an individual citizen. He insists that the statute has a "systemic focus" and that any ambiguity about the statute's focus should be resolved against the state. We disagree. In our view, White's conduct falls squarely within the types of behaviors that the statute was designed to punish: he interrupted telephone use for emergency communications. We will not depart from our previous holding on this issue.
 {¶ 16} The first assignment of error is overruled.
 {¶ 17} II. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO DISMISS BECAUSE OHIO REV. CODE § 2909.04(A)(1) IS VAGUE AND THUS VIOLATES THE DUE PROCESS CLAUSE OF THEFOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION."
 {¶ 18} White asserts that a reasonable person could not determine what conduct is prohibited by R.C. 2909.04(A) and that the statute is therefore void for vagueness. In advancing this argument, White claims that the statute could be interpreted to prohibit disabling a phone in one's own home or *Page 5 
to prohibit one's refusal to subscribe to telephone service.
 {¶ 19} When analyzing a statute under the void for vagueness doctrine, we conduct a three-part analysis. State v. Collier (1991),62 Ohio St.3d 267, 269, 581 N.E.2d 552. First, the wording of the statute must provide fair warning to the ordinary citizen so that citizens may conform their behavior to the requirements of the statute. Id. at 270. Second, the wording of the statute must preclude arbitrary, capricious and discriminatory enforcement. Id. Finally, the wording of the statute should not unreasonably impinge or inhibit fundamental constitutionally protected freedoms. Id. See, also, Carlisle v. Martz Concrete Co., Warren App. No. CA2006-06-067, 2007-Ohio-4362.
 {¶ 20} When the constitutionality of a statute is challenged, a court must apply all presumptions and rules of construction so as to uphold the statute if at all possible. State v. Dorso (1983), 4 Ohio St.3d 60,61, 446 N.E.2d 449.
 {¶ 21} We are unpersuaded by White's claim that reasonable people could find themselves prosecuted under this statute for innocent behavior because the language of the statute is vague. The statute is directed at the interruption or impairment of service. Thus, White's claim that someone could be prosecuted for destroying or disabling a phone in his own home — regardless of the circumstances — is without merit; unless the conduct in question was aimed at preventing access to telephone service, a citizen's decision to disable his own phone is not criminalized by this statute. Similarly, one's refusal to subscribe to phone service does not amount to an interruption or impairment of service. In our view, it is clear that the interruption or impairment contemplated by the statute must affect another person's access to public or emergency services. White engaged in precisely the type of conduct that is prohibited by the statute. In our view, the statute does not fail to warn ordinary citizens of the prohibited conduct. *Page 6 
 {¶ 22} White does not make any specific argument related to the second and third parts of the void for vagueness analysis set forth inCollier. He does not assert, and we do not believe, that the statute encourages arbitrary or discriminatory enforcement, or that it impinges on a fundamental constitutionally protected freedom.
 {¶ 23} The second assignment of error is overruled.
 {¶ 24} The judgment of the trial court will be affirmed.
GRADY, J. and GLASSER, J., concur.
(Hon. George M. Glasser retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1