[Cite as *State v. Singleton*, 2020-Ohio-2920.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.    28457 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TIMOTHEUS D. SINGLETON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 2016-05-1532 |

DECISION AND JOURNAL ENTRY

Dated: May 13, 2020

SCHAFER, Judge.

{¶1} Defendant-Appellant, Timotheus Singleton, appeals his conviction for robbery in the Summit County Court of Common Pleas. This Court previously affirmed Mr. Singleton's conviction in *State v. Singleton*, 9th Dist. Summit No. 28457, 2018-Ohio-5225, ¶ 2-3 ("*Singleton I*"). Mr. Singleton subsequently filed an application to reopen his appeal, alleging that his appellate counsel was ineffective. This Court determined that a genuine issue existed as to whether appellate counsel was ineffective and granted the motion. For the reasons that follow, we confirm our prior judgment in *Singleton I*.

I.

{¶2} We previously outlined the facts and procedure of this case as follows:

One day in April 2016, Mr. Singleton got into an argument with his girlfriend at the apartment that they shared. According to his girlfriend's recollection, Mr. Singleton collected his X-box game console as he left the apartment, but forgot to take the game controller. When he tried to reenter the apartment to retrieve it, she refused to let him enter. Mr. Singleton kicked in the door and entered the apartment nonetheless. A physical altercation then ensued between the two on the front lawn.

Mr. Singleton took his girlfriend's mobile phone, which had fallen to the ground during the scuffle, and left the scene.

Mr. Singleton was charged with one count of robbery, a violation of R.C. 2911.02(A)(2), and he waived his right to a trial by jury. The trial court found him guilty and sentenced him to six years in prison. This Court granted Mr. Singleton leave to file a delayed appeal, but dismissed his appeal because he failed to file an appellate brief. Mr. Singleton filed an application to reopen this appeal pursuant to App.R. 26(B), alleging that his appellate counsel was ineffective by virtue of failing to file the appellate brief.

*Id.* at ¶ 2-3. This Court granted the application for reopening and affirmed. *Id.* at ¶ 1.

{¶3} Mr. Singleton then filed a pro se application to reopen this appeal pursuant to App.R. 26(B), alleging that his appellate counsel was ineffective because, as noted in *Singleton I*, his sole argument was based on a statute that was not the basis of Mr. Singleton's conviction. Upon review of the application, this Court found that there was a genuine issue that counsel was ineffective in his representation of Mr. Singleton. Consequently, this Court granted Mr. Singleton's application to reopen and appointed new appellate counsel.

{¶4} Mr. Singleton now raises three assignments of error for our review. Because the resolutions of assignments of error two and three are relevant to our analysis of assignment of error one, we elect to consider them first.

II.

**Assignment of Error II**

**[Mr.] Singleton's conviction for robbery is unconstitutional as it is against the manifest weight of the evidence and is based on insufficient evidence in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.**

{¶5} Although Mr. Singleton states his assignment of error as challenging the sufficiency and manifest weight of the evidence to support his conviction, the substance of Mr. Singleton's assignment of error argues only that his conviction for robbery was based on insufficient evidence

because the State failed to prove that he intended to deprive his girlfriend, R.C., of her mobile phone. We limit our analysis accordingly.

{¶6} Mr. Singleton was charged with and convicted of robbery in violation of R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" A "theft offense" includes any of the multiple enumerated offenses listed in R.C. 2913.01(K). Relevant here, R.C. 2913.02 defines theft as knowingly obtaining or exerting control over property or services with the purpose to deprive the owner of that property or service by specific means.

{¶7} On appeal, Mr. Singleton does not dispute that he inflicted, attempted to inflict, or threatened to inflict physical harm on R.C. Mr. Singleton's only assertion on appeal is that the State failed to prove that he committed a theft offense because the State failed to show that his purpose was to deprive R.C. of her mobile phone. We disagree.

{¶8} In the context of a theft offense,

"Deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C). "'As the definition indicates, intent to permanently deprive the owner of the property is no longer a necessary element of a theft offense." *State v. Davis*, 9th Dist. Summit No.

23387, 2007-Ohio-1131, ¶ 17, quoting *Columbiana Cty. Bd. of Commrs. v. Nationwide Ins. Co.*, 130 Ohio App.3d 8, 17 (7th Dist.1998).

{¶9} In this case, the prosecution presented testimony from R.C., City of Akron Police Officer Joseph Bodnar, and City of Akron Police Detective Bertina King. The prosecution also offered into evidence video surveillance footage of the incident, several photographs depicting the area around R.C.'s apartment, and a recording of a 9-1-1 call.

{¶10} R.C. testified that following a verbal argument, Mr. Singleton physically assaulted her on their front porch after she threw his Xbox into the front yard. R.C. stated that during the assault she dropped her mobile phone and that Mr. Singleton picked it up and left. She further testified that she did not know where Mr. Singleton went, but that he returned her phone to her about an hour later. She acknowledged that Mr. Singleton knew that their neighbor had called the police before he returned the phone. A review of the video surveillance footage supports R.C.'s account of the incident. The surveillance footage also shows that when Mr. Singleton took R.C.'s phone, she attempted to grab it from his hand. Mr. Singleton then shoves R.C. and appears to run off up the street. R.C. also stated that Mr. Singleton gave her the phone at issue, but that she had always paid for the service.

{¶11} Officer Bodnar testified that he responded to a 9-1-1 call regarding the above incident. Officer Bodnar stated that he spoke with R.C. and that she gave a statement regarding what had occurred between her and Mr. Singleton. He testified that R.C. stated she and Mr. Singleton had gotten into an argument and that Mr. Singleton had gone outside. Officer Bodnar testified that R.C. stated they continued to argue through the door and that after he kicked the door, Mr. Singleton "went into the apartment, pulled her outside, hit her, put her in like a headlock and

grabbed her phone and ran down the street." Officer Bodnar further testified that he spoke with a neighbor who "confirmed" R.C.'s account of the incident."

{¶12} Detective King testified that she interviewed Mr. Singleton after he was arrested on a warrant related to this case. Detective King stated that Mr. Singleton admitted to being present during the above altercation and physically assaulting R.C., but that he denied taking anything with him when he left.

{¶13} Reviewing the above evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that Mr. Singleton knowingly withheld R.C.'s phone for a period of time that appropriated a substantial portion of its use or knowingly appropriated R.C.'s mobile phone with the purpose to not give proper consideration and without reasonable justification or excuse. *See* R.C. 2913.01(C)(1)/(3). Mr. Singleton's action of taking R.C.'s phone and fleeing after he beat her prevented R.C. from using her phone to call for help at a critical and potentially life-threatening time and did not return the phone until after he became aware that a neighbor called 9-1-1 and that R.C. spoke to the police. Contrary to the dissent's reliance on R.C.'s testimony that Mr. Singleton gave her the phone at issue in this case, that fact is irrelevant here because Mr. Singleton ceased having any possessory rights over the phone when he gave it to R.C. and R.C. assumed the responsibility of paying for the phone's service.

{¶14} Mr. Singleton's second assignment of error is overruled.

### Assignment of Error III

**[Mr.] Singleton was denied due process when the prosecutor suppressed evidence material to punishment[.]**

{¶15} In his third assignment of error, Mr. Singleton contends that his sentence must be reversed because the State violated Crim.R. 16 when it failed to disclose lyrics to a rap song allegedly composed by Mr. Singleton prior to his sentencing hearing.

{¶16} Crim.R. 16 regulates discovery in criminal matters. The State first contends that Crim.R. 16 was not applicable to the song lyrics here because they were not intended to be used at trial. The State does not support this contention in any way and instead argues that, even assuming the song lyrics were discoverable, the trial court remedied the alleged discovery violation by allowing Mr. Singleton to respond the State's allegation that he wrote the rap lyrics. We agree.

{¶17} Following the bench trial in this case, the trial court ordered a presentence investigation and set the matter for a hearing. At the sentencing hearing, the prosecutor recommended a maximum sentence of eight years. The prosecutor stated that the recommendation was not made lightly, noting that this case involved a "brutal, violent beating," that Mr. Singleton had a long criminal history including several violent offenses, and that Mr. Singleton was a member of a local gang. The prosecutor stated that in 2006, Mr. Singleton served a seven-year sentence for aggravated robbery with a gun, having weapons under disability, participation in a criminal gang, and trafficking in cocaine. He further stated that when Mr. Singleton was released, he composed a threatening rap aimed at the person Mr. Singleton "believed snitched and put him there." The prosecutor then read some the lyrics into the record.

{¶18} Mr. Singleton's trial counsel objected to the use of the rap lyrics at sentencing, noting that they were not previously provided. Mr. Singleton's trial counsel then requested that Mr. Singleton be able to respond to the allegation that he wrote the lyrics. Before the trial court responded to his trial counsel's request, Mr. Singleton stated "I don't even rap, sir. * * * I don't even [rap]. Prior to me coming here I was a student at Stark State University, sir. I was trying to change I'm still battling my anger problems, sir."

{¶19} The trial judge then inquired whether the prosecutor found the lyrics on Mr. Singleton's Facebook page. The prosecutor responded that they were gathered by the Akron Police

Gang Unit, and noted that the lyrics referenced details specific to Mr. Singleton's prior case and that he had pictures indicating Mr. Singleton wrote the lyrics. The trial court subsequently imposed sentence, stating,

> Based upon the facts and circumstances of your case in consideration of the relevant sentencing factors in the Revised Code, while they are disturbing and I guess brought up late and it didn't give you much of a chance to respond, I will give him some credit for that. I can understand given that you would want the maximum sentence, but the court's going to impose a sentence of six years * * *.

{¶20} The purpose of Crim.R. 16 is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the judicial system and the rights of the defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The rule aims "'to prevent surprise and the secreting of evidence favorable to one party.'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987). Crim.R. 16(L)(1) provides,

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule * * *, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

"[A] trial court has discretion in determining a sanction for a discovery violation." *Darmond* at ¶ 33. An abuse of discretion occurs when a trial court acts in a manner that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶21} In this case, Mr. Singleton did not request a continuance of the sentencing hearing. Mr. Singleton's trial counsel objected to the use of the lyrics at sentencing and argued that he should be able to respond to the allegation that he composed the lyrics. A review of the transcript shows that the trial judge gave Mr. Singleton the opportunity to respond and specifically stated that he was giving Mr. Singleton "some credit" for the prosecutor bringing the lyrics "up late" and

not giving him "much of a chance to respond." The trial court then imposed a sentence of six years rather than the maximum sentence of eight years as recommended by the prosecutor. Moreover, Mr. Singleton has not argued, much less demonstrated, how he was prejudiced by the trial court's decision to allow him to respond to the prosecutor's allegation he wrote the lyrics and subsequently give him "some credit" for the prosecutor's alleged discovery violation.

{¶22} Upon review, we cannot say that the trial court abused its discretion under the circumstances of this case. Mr. Singleton's third assignment of error is overruled.

### Assignment of Error I

**[Mr. Singleton] was denied his right to effective assistance of appellate counsel as guaranteed by the 6th Amendment to the U.S. Constitution and Art. 1 Sec. 10 of the Ohio Constitution.**

{¶23} In his first assignment of error, Mr. Singleton contends that his prior appellate counsel was ineffective because the only argument counsel raised in the merit brief was that the evidence was insufficient to convict Mr. Singleton of a crime for which he was neither charged nor convicted. Because Mr. Singleton has not shown he was prejudiced, we overrule this assignment of error.

{¶24} In *Singleton I*, appellate counsel specifically "argued that the State failed to prove that he used or threatened the immediate use of force while committing the offense or fleeing immediately after committing it." *Singleton I* at ¶ 4. However,

> Mr. Singleton was charged with robbery in violation of R.C. 2911.02(A)(2), which provides that "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." R.C. 2911.01(A)(3), on the other hand, provides that "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [u]se or threaten the immediate use of force against another." Mr. Singleton was neither charged with nor convicted of violating R.C. 2911.02(A)(3), so the State was not required to prove that he used or threatened the immediate use of force in connection with the offense.

*Id.* at ¶ 5. Because Mr. Singleton did not argue that the State failed to produce sufficient evidence to support his conviction under R.C. 2911.02(A)(2), and this Court declined to construct an argument on his behalf, this Court overruled his assignment of error and affirmed his conviction.

{¶25} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. The two-pronged analysis in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) is the appropriate standard to determine whether Johnson received ineffective assistance of appellate counsel. *State v. Were*, 120 Ohio St.3d 85, 2008-Ohio-5277, ¶ 10. Thus, "[i]n order to show ineffective assistance, [Mr. Singleton] 'must prove that his counsel [was] deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had he presented those claims.'" *Id.* at ¶ 11, quoting *State v. Sheppard*, 91 Ohio St.3d 329, 330 (2001).

{¶26} Our resolution of Mr. Singleton's second and third assignments of error show that the issues Mr. Singleton claims his counsel was deficient for failing to raise would not have been successful. Consequently, even assuming his prior appellate counsel's performance was deficient, Mr. Singleton has not shown he received ineffective assistance of appellate counsel.

{¶27} Mr. Singleton's first assignment of error is overruled.

III.

{¶28} Mr. Singleton's first, second, and third assignments of error are overruled. Therefore, we confirm our prior judgment in *Singleton I* affirming Mr. Singleton's convictions. *See* App.R. 26(B)(9).

Judgment confirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

JULIE A. SCHAFER
FOR THE COURT

 

 

CALLAHAN, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶29} I respectfully dissent from the judgment of the majority as I would conclude that there was insufficient evidence to support a finding of guilt for the crime of robbery. Specifically, I would conclude that the State failed to present sufficient evidence that Singleton's act of temporarily taking the phone, which he purchased for the victim, was with the purpose to deprive her of the phone, as that term is defined in the statute.

{¶30} The testimony at trial was uncontroverted that Singleton purchased the phone as a gift for the victim. During the altercation, the phone fell to the ground, Singleton picked it up, and the victim tried to grab it back. Singleton then left with the phone. Approximately an hour after the assault, Singleton brought the phone back to the victim and resumed staying with the victim.

{¶31} I conclude that the evidence presented, if believed, was insufficient to convince the average mind of Singleton's guilt beyond a reasonable doubt because there was insufficient evidence that it was Singleton's purpose to "accept, use, or appropriate * * * property* * * with purpose not to give proper consideration in return for the * * * property * * *, and without reasonable justification or excuse for not giving proper consideration." R.C. 2913.01(C)(3); *see also State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶32} Moreover, there was insufficient evidence that it was Singleton's purpose to withhold the phone permanently, "or for a period that appropriate[d] a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration[.]" R.C. 2913.01(C)(1). While it is true that the victim could not use the phone for the hour after Singleton took it, there is nothing in the record that remotely suggests that, by taking the phone for that hour, he appropriated a substantial portion of its value or use. *See id.*; *see also State v. Vilani*, 12th Dist. Butler No. CA2013-12-231, 2014-Ohio-4182, ¶ 17-25 (concluding sufficient evidence of the intent to deprive under R.C. 2913.01(C)(1) was presented under circumstances in which, while the stolen vehicle was in the defendant's possession, extensive interior and exterior damage occurred causing the insurance company to deem the vehicle totaled); *State v. Jenkins*, 8th Dist. Cuyahoga No. 84644, 2005-Ohio-2824, ¶ 23 ("In this case, the state demonstrated that [the victim] gave defendant consent to remove the rust and calcium deposits from the van, and that the van was otherwise in good condition. The state also demonstrated that water and electricity were available

to defendant in the garage and that under no circumstances was defendant to remove any vehicles from the parking garage. It is undisputed that defendant removed the vehicle from the garage and that it was returned in deplorable condition. The state also presented compelling evidence that defendant did not respond to any of the numerous efforts to contact him. From the foregoing, the evidence demonstrated that defendant intended to deprive the owner of the van for a period resulting in substantial loss to her."). Instead, his behavior may have been more akin to disrupting public services, a crime not included in Singleton's indictment. *See* R.C. 2929.04(A)(3); *State v. Jackson*, 3d Dist. Seneca No. 13-18-18, 2019-Ohio-170, ¶ 16 ("[A] person can be guilty of disrupting public services if they purposely substantially impair the ability of emergency services personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm by any means."); *see also State v. Tajblik*, 6th Dist. Wood No. WD-14-064, 2016-Ohio-977, ¶ 13, quoting *State v. Hill*, 7th Dist. Mahoning No. 09MO3, 2010-Ohio-4871, ¶ 25 (noting that, in cases involving disrupting public services, "the deciding factor * * *is whether the defendant's conduct caused the victim to be unable to use that telephone"); *Tajblick* at ¶ 13, quoting *State v. Galindo*, 5th Dist. Stark No. 2011CA00258, 2012-Ohio-3626, ¶ 17 (indicating that "[t]he statute is aimed at conduct which prevents a victim from using public services to seek emergency assistance").

**{¶33}** There was undoubtedly sufficient evidence presented that Singleton committed a serious crime, and it is unfortunate that other charges were not pursued to hold him accountable for his behavior. Nevertheless, I cannot agree that the State demonstrated that Singleton committed the offense for which he was found guilty. Accordingly, I respectfully dissent from the judgment of the majority.

APPEARANCES:

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.