[Cite as *State v. Jackson*, 2017-Ohio-635.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28192 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RESHARD JACKSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 14 11 3501 (I) |

DECISION AND JOURNAL ENTRY

Dated: February 22, 2017

CARR, Judge.

{¶1} Defendant-Appellant, Reshard Jackson, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On the evening of November 15, 2014, multiple law enforcement agencies conducted a raid at a home in Akron. The raid occurred because the police suspected that a large scale, illegal dogfight was set to occur on the property. As a result of the raid, the police arrested more than 45 individuals in connection with dogfighting. Jackson was one of the individuals whom the police arrested.

{¶3} A grand jury indicted Jackson on one count of dogfighting, in violation of R.C. 959.16(A)(5). Jackson waived his right to a jury and went to trial along with two of his co-defendants. At the conclusion of trial, the court found Jackson guilty of dogfighting. The court sentenced him to three years of community control.

{**¶4**}    Jackson now appeals from his conviction and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND THE ACCUSED GUILTY, AS THE STATE FAILED TO PROPERLY IDENTIFY THE ACCUSED AT TRIAL AND THE STATE OFFERED NO EVIDENCE TO SUPPORT A FINDING THAT THE ACCUSED PAID TO BE PRESENT AT A DOGFIGHT.

{**¶5**}    In his assignment of error, Jackson argues that his conviction is based on insufficient evidence and, alternatively, is against the manifest weight of the evidence. Specifically, he argues that the State failed to prove either identity or the fact that he knowingly paid money or gave something of value to be present at a dogfight. We reject Jackson's assignment of error.

{**¶6**}    "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

**Identification**

{¶7} The identity of a perpetrator must be proved by the State beyond a reasonable doubt. *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12. Like any other element of an offense, identity may be established through direct or circumstantial evidence. *Id.*, citing *State v. Gorgan*, 9th Dist. Medina No. 1824, 1990 WL 1771, *1 (Jan. 10, 1990). "A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 19. *Accord Akron v. Capanna*, 9th Dist. Summit No. 14104, 1989 WL 108785, *2 (Sept. 20, 1989), quoting *State v. Scott*, 3 Ohio App.2d 239, 244 (7th Dist.1965) ("'* * * It is not necessary that the identification be made positively by a witness, * * *. Lack of positiveness does not destroy the value of the identification, but goes to the weight of the testimony.'").

{¶8} Jackson argues that his conviction is based on insufficient evidence because the State never successfully established the element of identification at trial. He argues that the State's first identification witness, Detective Mildred Morris, confused him with one of his co-defendants at trial such that she was unable to offer a positive identification. He further argues that the trial court sustained his objection when the State attempted to identify him through a second witness, Detective Mark Hockman.

{¶9} Detective Morris testified that she was a member of the Akron Police Department's Crime Scene Unit and, on the night of the raid, she came on scene and photographed multiple individuals who had been arrested. She identified three photographs, Exhibits 5, 6, and 7, as pictures of three of the individuals that she photographed that evening. There was much confusion, however, when the State attempted to use the photographs to have

Detective Morris identify Jackson and his two co-defendants as three of the arrestees that she photographed. Detective Morris changed her initial identification of the particular defendant depicted in Exhibit 5 after the State asked her to look at the defendants again.[1] When Jackson's counsel repeatedly drew attention to Detective Morris' misidentification on cross-examination, she testified that she had made a mistake because she could not clearly see all three co-defendants when the State initially asked her to identify them.

{¶10} Detective Hockman, a member of the Akron SWAT team, testified that he primarily conducted surveillance on the evening of the raid, but also completed booking slips and a report of investigation following the raid. He testified, however, that he did not personally complete Jackson's booking slip. Accordingly, when the prosecutor asked him to identify Jackson as an individual who was booked at the scene, the court sustained Jackson's objection to that identification on the basis of hearsay. Subsequently, the prosecutor asked Detective Hockman whether he had included Jackson's booking information and photograph in the report of investigation that he completed after the raid. Detective Hockman confirmed that he had reviewed Jackson's booking information and photograph before including it in his report. He testified that Jackson was the person he saw in the booking photograph and that Jackson was present in the courtroom. Jackson did not object when the detective confirmed that he was the man in the photograph, testified that he was present in the courtroom, and described his clothing for the court.

{¶11} The State here was not required to present the court with an in-court identification

---

[1] We would note that Detective Morris used each defendant's physical location in the courtroom and physical description when making her identifications. The State never asked for the record to reflect the name of each individual defendant Detective Morris was identifying when she relied upon Exhibits 5, 6, and 7 to make her identifications.

of Jackson so long as there was sufficient direct or circumstantial evidence in the record to connect him with his dogfighting charge. *See Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 19. Even so, the State was able to elicit in-court identification testimony from Detective Hockman. Although Detective Hockman did not interact with Jackson at the scene of the crime, he testified that Jackson went through the booking process at the jail and that he had reviewed Jackson's booking information and photograph for purposes of drafting his report of investigation. He then testified that Jackson was the man who he saw in the booking photograph. Any issue regarding his ability to positively identify Jackson based on the information he reviewed went to the weight of his identification rather than its admissibility. *See Capanna*, 1989 WL 108785, at *2, quoting *Scott*, 3 Ohio App.2d at 244. Viewing the evidence in a light most favorable to the State, we must conclude that it set forth evidence from which a rational trier of fact could have concluded that it satisfied its burden to prove Jackson's identity. *See Jenks*, 61 Ohio St.3d at 273. Jackson's argument to the contrary lacks merit.

**Knowingly Paid Money or Gave Anything of Value**

{¶12} R.C. 959.16(A)(5) provides that "[n]o person shall knowingly * * * [p]ay money or give anything else of value in exchange for admission to or be present at a dogfight." This Court recently examined the foregoing statute and found it to be ambiguous. *See State v. Taylor*, 9th Dist. Summit No. 28091, 2016-Ohio-7953. We, therefore, conducted a statutory analysis and determined that R.C. 959.16(A)(5)'s legislative history supports a disjunctive reading of the statute. *Id.* at ¶ 12-15. We held that, to support a conviction under R.C. 959.16(A)(5), the State may prove either that a person (1) knowingly paid money or gave something of value for admission to a dogfight, or (2) knowingly was present at a dogfight. *Id.* at ¶ 15. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a

certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B).

{¶13} Jackson argues that his dogfighting conviction is based on insufficient evidence because the State failed to set forth any evidence that he paid to be present at a dogfight. To sustain a conviction, however, the State was not required to prove that he paid money or gave something of value for admission to a dogfight. The State could prove *either* that he (1) knowingly paid money or gave something of value for admission to a dogfight, *or* (2) knowingly was present at a dogfight. *Taylor* at ¶ 15. Jackson has not set forth any argument regarding whether he was knowingly present at a dogfight. *See* App.R. 16(A)(7). He has not argued that there was insufficient evidence of his mens rea. Nor has he made any argument regarding whether a dogfight, in fact, occurred at the subject property that evening. This Court acknowledges that Jackson did not have the benefit of *State v. Taylor* when drafting his brief. It is not uncommon, however, for litigants to have to contend with changes in the law. Moreover, Jackson was aware that the interpretation of the dogfighting statute was an issue of much debate in the court below and would likely be litigated on appeal. In drafting his brief, there was nothing to prevent him from arguing that the State also failed to prove that he was knowingly present at a dogfight. Because he did not do so, this Court will not construct that argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). *See also State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 6. Jackson's sufficiency argument lacks merit.

{¶14} Jackson's brief also includes a blanket statement that his conviction is against the manifest weight of the evidence. He has not, however, challenged any of the evidence the State

set forth as "unreliable or lacking credibility." *State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. This Court will not develop a manifest weight argument on Jackson's behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. Jackson has not shown that this is the exceptional case where the trier of fact lost its way in convicting him. *See id.* Thus, his assignment of error is overruled.

### III.

{¶15} Jackson's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.