[Cite as *State v. Honorable*, 2017-Ohio-4160.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28256 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CARL HONORABLE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2015 10 3379 |

DECISION AND JOURNAL ENTRY

Dated: June 7, 2017

TEODOSIO, Judge.

{¶1}    The Appellant, Carl C. Honorable, appeals his conviction by the Summit County Court of Common Pleas for the offense of disrupting public services. We affirm.

I.

{¶2}    Mr. Honorable was arrested and charged with aggravated burglary and disrupting public services stemming from events that occurred on October 28, 2015. A jury found Mr. Honorable not guilty as to aggravated burglary and guilty of the offense of disrupting public services, and the trial court sentenced him to a term of twelve months. Mr. Honorable now appeals, raising two assignments of error.

The Facts

{¶3}    The victim testified that she had known Mr. Honorable since childhood, and that they had grown up together. In 2015, she saw him for the first time in many years at the staffing agency where they were both employed. The victim further testified that Mr. Honorable had

been staying with her for three to four weeks prior to the incident at issue, and that she had invited him to stay with her because her apartment was close to their place of work.

{¶4} The victim recounted the following events in her testimony. On October 27, 2017, Mr. Honorable repeatedly called the victim during the day, while she was at a work site, wanting to argue. When she returned to the staffing agency after midnight, Mr. Honorable was waiting for her across the street. He walked towards her and resumed arguing with her. The victim hit Mr. Honorable with her book bag, and he responded by slapping her in the face. She walked home and Mr. Honorable followed. When she arrived at her apartment, she went inside and locked the door. Mr. Honorable came to the door, yelling at her to let him inside, which she refused to do. He proceeded to kick open the door, and at some point thereafter, grabbed the victim by her neck. She told him she would call the police, and Mr. Honorable reacted by taking her cell phone from her hands and throwing it on the floor, whereupon it broke apart and the battery became dislodged. She ran to her neighbor's apartment and called the police from there. When the police arrived, they were met by the victim, who told them Mr. Honorable was inside her apartment. The police proceeded to enter the apartment and arrested Mr. Honorable.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN VIOLATION OF MR. CARL C. HONORABLE'S DUE PROCESS RIGHTS UNDER ARTICLE I, SECTION 10[,] OF THE OHIO CONSTITUTION WHEN IT OVERRULED HIS CRIM.R. 29 MOTION FOR ACQUITTAL.

{¶5} In his first assignment of error, Mr. Honorable argues the State failed to present sufficient evidence of: 1.) identity; 2.) damage to the phone or tampering with the phone; and 3.) interruption or impairment of phone service. We disagree.

**{¶6}** Whether the evidence in a case is legally sufficient to sustain a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Id*. This Court reviews questions of law under a de novo standard. *State v. Trifari,* 9th Dist. Medina No. 08CA0043–M, 2009–Ohio–667, ¶ 12.

**{¶7}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

**{¶8}** Mr. Honorable was convicted under R.C. 2904.04(A)(1), which provides:

(A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

    (1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications * * *.

For the purposes of R.C. 2909.04, "property" includes telecommunication devices. *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, at ¶ 25, citing R.C. 2901.01(A)(10)(a).

**{¶9}** Mr. Honorable first argues that the prosecution failed to present sufficient evidence as to the issue of identity because the victim never identified him in the courtroom during the trial and because the victim identified him as Carl M. Honorable, as opposed to Carl C. Honorable, during the telephone conversation with a 9-1-1 operator.

{¶10} "The identity of a perpetrator must be proved by the State beyond a reasonable doubt." *State v. Jackson*, 9th Dist. Summit No. 28192, 2017-Ohio-635, ¶ 7. "[I]dentity may be established through direct or circumstantial evidence." *Id.* "A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 19.

{¶11} In the present case, the State produced circumstantial evidence that Mr. Honorable was the perpetrator. The victim testified that she had known Mr. Honorable since childhood, and that he was currently living with her. The testimony of the police officers responding to the victim's 9-1-1 call provided that the victim indicated to the officers that the suspect's name was Carl Honorable, and that he was still inside of her apartment when they arrived. When the police entered the apartment, Mr. Honorable was the only person discovered, and he was arrested at that time. The officers testified that the person they found in the apartment that night was present in the courtroom and visually identified Mr. Honorable as that person. The officers also testified that shoeprints on the apartment door that was alleged to have been kicked-in matched Mr. Honorable's shoes.

{¶12} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the identity of the perpetrator proven beyond a reasonable doubt. Because there is sufficient evidence to prove that Mr. Honorable was the perpetrator, it was not required that the victim visually identify him in the courtroom.

{¶13} Mr. Honorable next argues the State failed to present sufficient evidence of damage to the phone or tampering with the phone. In support of his argument, Mr. Honorable points to *State v. Bedford*, 9th Dist. Summit Nos. 25048, 25066, 2010-Ohio-3577, and *State v.*

*Tayse*, 9th Dist. Summit No. 23978, 2009-Ohio-1209. Both cases are distinguishable from the present matter.

{¶14} In *Tayse*, the defendant "was not accused of damaging or destroying his victim's cell phone. He was accused of simply turning it off." *Tayse* at ¶ 23. In *Bedford*, this Court stated:

> [The victim] had a cordless telephone as well as at least one standard corded phone * * *. Evidence indicated that [the defendant] took the cordless phone from [the victim] and did not allow her to use it for a period of time. The State introduced no evidence, however, that [the defendant] damaged or tampered with the phone. For the purposes of R.C. 2909.04, physically withholding the use of a cordless phone is indistinguishable from turning off a cell phone. The State failed to establish that [the defendant] damaged or tampered with a telephone.

*Bedford* at ¶ 11.

{¶15} The victim in the present case testified that Mr. Honorable took her cell phone from her hand and threw it on the ground and "[i]t just shattered everywhere." One of the responding officers testified that the phone "was in pieces" and that the battery was separated from the phone. The photographs of the cell phone submitted as State's exhibits six and seven show the back cover of the phone separated from the body of the phone; the phone was not merely separated from its case as stated by Mr. Honorable in his brief. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, that Mr. Honorable damaged or tampered with the victim's cell phone.

{¶16} Mr. Honorable also argues that the State failed to present sufficient evidence that phone service was interrupted or impaired. "The statute prohibits purposeful[ly] or knowing[ly] damaging or tampering with property that interrupts or impairs telephone service. Telephone service includes the initiation of telephone calls." *State v. White*, 2d Dist. Montgomery No. 21795, 2007-Ohio-5671, ¶ 12. In *White*, the court determined that throwing one phone into a

toilet and taking the battery out of a second phone constituted interruption or impairment of telephone service. White at ¶ 2, ¶ 21. Likewise, taking a phone from a victim and throwing it so that it cannot be used constitutes interruption or impairment. *See State v. Hill*, 7th Dist. Monroe No. 09 MO 3, 2010-Ohio-4871, ¶ 28; *see also State v. Bailey*, 2d Dist. Montgomery No. 24861, 2012-Ohio-3274, ¶ 34.

{¶17} The facts in the present case demonstrate interruption or impairment of telephone service. As we have noted, the victim testified that Mr. Honorable grabbed her cell phone out of her hands and threw it to the ground, causing the back of the phone and the battery to become dislodged and scatter. She further testified that when she tried to call the police "he had [her] phone and wouldn't let [her] call," and that she couldn't locate the phone after he threw it. Mr. Honorable thus prevented the victim from using her cell phone and delayed her in seeking emergency assistance, as she had to run to her neighbor's apartment to call the police. Once again, viewing this evidence in a light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, that the victim's phone service was interrupted or impaired.

{¶18} Based upon the testimony as recounted above, a rational trier of fact could reasonably have found, beyond a reasonable doubt, that Mr. Honorable committed the offense of disrupting public services, and viewing the evidence in a light most favorable to the State, there is sufficient evidence to support such a finding. Mr. Honorable's first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

MR. HONORABLE'S CONVICTION FOR DISRUPTING PUBLIC SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3[,] OF THE OHIO CONSTITUTION.

{¶19} In his second assignment of error, Mr. Honorable argues that his conviction for disrupting public services was against the manifest weight of the evidence in light of the conflicting evidence presented at trial. We disagree.

{¶20} "In determining whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence concerns whether a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, "the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*., quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases in which the evidence weighs heavily against the conviction. *Otten* at 340.

{¶21} "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 WL 1260298, *7 (Dec. 22, 1999). An appellate court will not overturn a judgment on this basis alone, and may not merely substitute its judgment for that of the factfinder. *State v. Serva*, 9th Dist. Summit No. 23323, 2007–Ohio–3060, ¶ 8.

{¶22} Mr. Honorable points to conflicting evidence in this matter to argue that the testimony of the victim should not be believed. The victim provided testimony that Mr.

Honorable was only a friend, although she described him as her boyfriend on the night of the incident in question. Although the victim testified that the police asked her if they could kick her back door in, the police officers testified that they did not kick the door in. The victim also initially misidentified the State's exhibit two as her kitchen door, when in fact it was the door of a police transport vehicle. Finally, in her 9-1-1 call, the victim stated that Mr. Honorable's middle initial was "M" for "magistrate," when his middle initial is actually "C."

{¶23} "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010–Ohio–3296, ¶ 15. We will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version. *State v. Tabassum*, 9th Dist. Summit No. 25568, 2011–Ohio–6790, ¶ 27. Likewise, "[t]he jury has the right to place considerable weight on the testimony of the victim." *State v. Felder*, 9th Dist. Lorain No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992).

{¶24} After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the jury's resolution of the testimony was unreasonable. Although there were inconsistencies with the testimony of the victim, her testimony supports the conclusion that Mr. Honorable knowingly interrupted or impaired her telephone service by damaging or tampering with her cell phone. Furthermore, we have repeatedly held that "[t]he jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004–Ohio–7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these

observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003–Ohio–727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993).

**{¶25}** As we noted above, with regard to the issue of identity, the State presented evidence that Mr. Honorable was the perpetrator. At trial, Mr. Honorable provided no evidence, and made no argument, that this was a matter of mistaken identity. The victim's testimony indicated that Mr. Honorable grabbed the phone out of her hand as she was attempting to call the police and threw the phone on to the ground, resulting in damage to the cell phone and preventing the victim from being able to locate and use the cell phone. We further note that the inconsistencies in the testimony neither speak to, nor negate, any element of the offense.

**{¶26}** "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." *Haydon* at *7. This is not the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice in finding Mr. Honorable guilty. Accordingly, Mr. Honorable's second assignment of error is overruled.

III.

**{¶27}** Mr. Honorable's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

REBECCA M. BLACK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.